IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL JONES,

Petitioner,

vs.

MATTHEW CATE, Secretary,[1]

Respondent.

Case No. 2:08-cv-01933-JKS

MEMORANDUM DECISION

Petitioner, Michael Jones, a state petitioner proceeding *pro se*, has filed a Petition for
Writ of Habeas Corpus under 28 U.S.C. § 2254.  Jones has been released on parole but remains
in the custody of the California Department of Corrections and Rehabilitation for the duration of
his parole. Respondent has filed an answer, and Jones has filed a traverse.

PROCEDURAL HISTORY

The criminal charges and subsequent conviction arose out of the accusations of three
women, Elisa P., Sharon G., Anne E., who claimed that Jones either raped or sexually assaulted
them while they were asleep.  On September 11, 2003, following a jury trial, Jones was
convicted  of three counts of rape of an unconscious person (Pen.Code, § 261, subd. (a)(4)), and
one count each of attempted rape of an unconscious person (§§ 261, subd. (a)(4), 664), assault

_____

[1] Matthew Cate, Secretary, California Department of Corrections and Rehabilitation, is
substituted for Michael Martel, Warden Mule Creek State Prison.  Federal Rule of Civil
Procedure 25(d).

with intent to commit rape (§ 220), sexual battery (§ 243.4, subd. (e)(1)), and false imprisonment (§§ 236, 237, subd. (a)).  Jones was sentenced to state prison for 11 years and to jail for two concurrent terms of 180 days.

Jones appealed the judgment to the California Court of Appeal, Third District, which rejected his appeal in a reasoned, unpublished decision on September 7, 2005.[2]  Jones then filed a petition for review in the California Supreme Court (Case: S138051), and the Court denied review on November 30, 2005.

On February 14, 2007, Jones filed a petition for a writ of habeas corpus (Case: HCCR 07-005) in the Yolo County Superior Court, raising three claims:  1) the trial court erred in failing to instruct on the defense of mistake of fact; 2) CALJIC No. 10.02 is confusing and trial court erred in failing to clarify it, and; 3) the trial court erred in failing to instruct on the defendant's honest and reasonable belief that victim consented.

On March 17, 2007, Jones supplemented his petition and added three more claims:  4) the prosecutor committed *Brady* error by failing to disclose the results of the victim's toxicology test; 5) prosecutorial misconduct, and; 6) ineffective assistance of trial counsel.  On April 18, 2007, the court denied the petition.  Jones then filed a petition for writ of habeas corpus on May 29, 2007, in the Third Appellate District Court of Appeal (Case: C055792).  In his petition, he made the same claims as in the petition and the supplement in case No. HCCR 07-005.  The court denied the petition on June 14, 2007.

On July 2, 2007, Jones filed a second petition in the California Court of Appeal (Case: C056121) raising the same claims that he raised in case No. C055792.   Apparently, the petition

---

[2]  People v. Jones, 2005 WL 2160425 (Cal. App. 2005).

was an attempt to clarify and/or modify the claims raised in case no. C055792.  The court denied this petition on July 12, 2007.

Jones then filed a petition for habeas corpus in the California Supreme Court (Case: S155943) alleging the same six claims he raised in the Yolo County Superior Court and on appeal.  The Court denied the Petition on February 27, 2008.

On August 14, 2008, Jones filed a Petition for Habeas Corpus in this Court.  In his Petition, Jones raises six claims for relief:

1.  The prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963) by not disclosing exculpatory documents to the defense;

2.  California Penal Code § 261(a)(4) is vague;

3.  California Jury Instruction–Criminal No. 10.02 is ambiguous;

4.  The trial court erred by not instructing on a mistake of fact defense;

5.  The prosecutor committed misconduct; and,

6.  Jones' trial counsel was ineffective.

Jones also claims he is entitled to an evidentiary hearing to resolve these grounds.  Respondent concedes that all of Jones' claims have been properly exhausted in the state courts; however, Respondent asserts that all of Jones' claims, with the exception of claim numbers two and six, are procedurally barred on adequate an independent state grounds.

<u>STANDARD OF REVIEW</u>

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based

on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[3]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[4]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[5]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[6]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[7]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[8]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected

---

[3] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[4] *Williams*, 529 U.S. at 412.

[5] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[6] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[7] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[8] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

4

the trial with unfairness as to make the resulting conviction a denial of due process.'"[9]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[10]  Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[11]

In applying this standard, this Court reviews the last reasoned decision by the state court.[12]  State appellate court decisions that affirm a lower court's opinion without explanation are presumed to have adopted the reasoning of the lower court.[13]  Under California's unique habeas procedure, a defendant who is denied habeas relief in the superior court files a new original petition for relief in the court of appeal.  If denied relief by the court of appeal, the defendant has the option of either filing a new original petition for habeas relief or a petition for review of the court of appeal's denial in the California Supreme Court.[14]  This is considered as

---

[9] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[10] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[11] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[12] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

[13] *Ylst*, 501 U.S. at 802-03.

[14] *See Carey v. Saffold*, 536 U.S. 214, 221-22 (2002).

the functional equivalent of the appeal process.[15]  Under AEDPA, the state court's findings of

fact are presumed to be correct unless the petitioner rebuts this presumption by clear and

convincing evidence.[16]  This presumption applies to state trial courts and appellate courts alike.[17]

　　When there is no reasoned state court decision denying an issue presented to the state

court and raised in a federal habeas petition, this Court must presume that the state court decided

all the issues presented to it and perform an independent review of the record to ascertain

whether the state court decision was objectively unreasonable.[18]  In so doing, because it is not

clear that it did not so do, the Court presumes that the state court decided the claim on the merits

and the decision rested on federal grounds, giving the presumed decision the same deference as a

reasoned decision.[19]  The scope of this review is for clear error of the state court ruling on the

petition:

> [A]lthough we cannot undertake our review by analyzing the basis for the state
> court's decision, we can view it through the "objectively reasonable" lens ground
> by *Williams* . . . .  Federal habeas review is not *de novo* when the state court does
> not supply reasoning for its decision, but an independent review of the record is
> required to determine whether the state court clearly erred in its application of

---

[15] *Id.* at 222.

[16] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[17] *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

[18] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Pham v. Terhune*, 400 F.3d
740, 742 (9th Cir. 2005) (per curiam).

[19] *Harrington v. Richter*, 562 U.S. --, 131 S. Ct. 770, 784-85 (2011) (rejecting the
argument that a summary disposition was not entitled to § 2254(d) deference); *see Harris v.
Reed*, 489 U.S. 255, 263 (1989); *Coleman v. Thompson*, 501 U.S. 722, 740 (1991).

controlling federal law.  Only by that examination may we determine whether the state court's decision was objectively reasonable.[20]

"[A]lthough we independently review the record, we still defer to the state court's ultimate decision."[21]

DISCUSSION

Because the Respondent has claimed that grounds 1, 3, 4, and 5 are procedurally barred, this Court will address that issue first.  This Court will then discuss the remaining claims on the merits and, finally, will determine whether there is a need for an evidentiary hearing.

Procedural Bar

Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."[22]  Thus, this Court may not reach the merits of claims "in which the petitioner failed to follow applicable state procedural rules in raising the claims . . . ."[23]  "[I]n order to constitute adequate and independent grounds sufficient to support a finding of procedural default, a state rule must be clear, consistently applied, and well established at the

---

[20] *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000) (internal citation omitted); *see also Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004).

[21] *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary. *Cf. Harris*, 489 U.S. at 265 (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)."

[22] *Coleman,* 501 U.S. at 729.

[23] *Sawyer v. Whitley,* 505 U.S. 333, 338 (1992).

7

time of the petitioner's purported default."[24]  A discretionary state procedural rule can be firmly

established and regularly followed, so as to bar federal habeas review, even if the appropriate

exercise of discretion may permit consideration of a federal claim in some cases but not others.[25]

Under California law, contentions that could have been raised during direct appeal, but were not,

generally cannot be renewed in a petition for habeas corpus.[26]  In rejecting Jones' six-claim

petition, the Yolo County Superior Court held:

> Habeas corpus may not be used as a substitute for direct appeal. (*In re Dixon* (1953) 41
> Cal.2d 756, 760.)  Although the present petition attempts a creative end-run around this
> fundamental rule of habeas corpus, it is ultimately unconvincing.  This court concludes
> that the reframed issues presented in the current habeas corpus petition are subsumed
> within the issues rejected by the September 7, 2005, Court of Appeal decision. To the
> degree that petitioner seeks to belatedly raise other issues in an "Additional 3 Ground
> Supplement to Petition Pending in this Court (Filed 2-8- 07)," filed on March 15, 2007,
> those issues could have been raised on direct appeal or do not otherwise state a prima
> facie case for relief.[27]

This Court agrees with Respondent that, because Jones' claims were defaulted in state

court on an adequate and independent state ground, they will not be considered in federal habeas

proceedings unless Petitioner can demonstrate cause for the default and actual prejudice.[28]  To

prove a fundamental miscarriage of justice, Jones must show that a constitutional violation

---

[24] *Morales v. Calderon,* 85 F.3d 1387, 1393 (9th Cir. 1996) (internal quotation marks and citation omitted).

[25] *Beard v. Kindler*, 558 U.S. ___, 130 S. Ct. 612, 618 (2009).

[26] *In re Terry,* 484 P.2d 1375, 1387 (Cal. 1971).

[27]  Lodged Doc. No. 9.  Although the Yolo County Superior Court found that Jones' claims were procedurally barred, the court also apparently felt they were also not valid on the merits, since it noted that they had been subsumed by the Court of Appeal's decision.

[28]  *See Coleman,* 501 U.S. at 729.

probably resulted in his conviction despite his actual innocence.[29]   Although at the gateway stage Jones need not establish his innocence as an "absolute certainty," he must demonstrate that it is more likely than not that, no reasonable juror could find him guilty beyond a reasonable doubt.[30] Jones has not plead any facts that would allow this Court to find that his default is excusable and that he will suffer actual prejudice if this Court fails to hear the claims.   Accordingly, claim numbers 1, 3, 4, and 5 are procedurally barred and will not be considered by this Court.

---

[29] *See Schlup v. Delo,* 513 U.S. 298, 321-25 (1995) (linking miscarriages of justice to actual innocence); *United States v. Olano,* 507 U.S. 725, 736 (1993) ("In our collateral-review jurisprudence, the term 'miscarriage of justice' means that the defendant is actually innocent."); *Murray v. Carrier,* 477 U.S. 478, 496 (1986) ("in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.")

[30] *House v. Bell*, 547 U.S. 518, 538 (2006).

Claim 2:  California Penal Code § 261(a)(4) Is Vague

Jones claims that California Penal Code § 261(a)(4) is impermissibly vague, since the statute

fails to provide definite criteria for determining guilt.[31]  Jones raised this claim on direct appeal

and the California Court of Appeal, Third District, rejected it, holding:

> In a related argument, defendant contends that, as applied to this case, section 261, subdivision (a)(4) fails to provide definite criteria for determining guilt, thereby denying his state and federal rights to due process of law. We are not convinced.
>
> As noted, section 261, subdivision (a)(4) applies when a person is "at the time unconscious of the nature of the act," which is defined as "incapable of resisting because the victim . . . [¶] . . . [w]as unconscious or asleep." (See fn. 1, ante.) This statute explicitly assesses the victim's capability to resist at the time of the act, not prior to the act. For that reason, any "actual[ ] or apparent[ ]" expression of consent prior to the act is irrelevant. (*See Dancy*, *supra*, 102 Cal.App.4th at p. 37 .)
>
> Because intercourse with a sleeping person is clearly prohibited, regardless of any expression or inference of advance consent, the statute is sufficiently definite to "provide a standard of conduct for those whose activities are proscribed." (*People v. Heitzman*, (1994) 9 Cal.4th 189, 199.) Subdivision (a)(4) of section 261 put defendant on notice that Elisa would be "incapable of resisting" while she was asleep, regardless of what she had said or done before she fell asleep. Moreover, as we have explained, Elisa never gave advance consent or appeared to give advance consent to intercourse after falling asleep or losing consciousness. (See fn. 3, ante.)  No due process violation is shown.[32]

---

[31]  California Penal Code § 261(a)(4) reads:

(a) Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances:

. . . .

(4) Where a person is at the time unconscious of the nature of the act, and this is known to the accused. As used in this paragraph, "unconscious of the nature of the act" means incapable of resisting because the victim meets one of the following conditions:

(A) Was unconscious or asleep.

(B) Was not aware, knowing, perceiving, or cognizant that the act occurred.

(C) Was not aware, knowing, perceiving, or cognizant of the essential characteristics of the act due to the perpetrator's fraud in fact.

(D) Was not aware, knowing, perceiving, or cognizant of the essential characteristics of the act due to the perpetrator's fraudulent representation that the sexual penetration served a professional purpose when it served no professional purpose.

[32]  *Jones*, 2005 WL 2160425 at 6-7.

Because the California Court of Appeal has already addressed this claim, this Court may only grant relief if that decision was contrary to established federal law or involved an unreasonable interpretation of the facts.[33]  In his Petition, Jones claims that "the appellate court erroneously narrowed its inquiry to whether the statute was clear as to the timing of a defendant's knowledge of consent, ruling that prior consent did not negate an element of the offense."[34]  Jones claims that"[t]he issue thus not reached [sic] is a central one: would a potential defendant be on notice that, under sleep conditions present in this case, where memories, even judgement [sic] might be cloudy, an actively participating and consenting sexual encounter would subject him to a charge of rape of an unconscious person."[35]  Although his argument is rather muddled, it seems that Jones is contemplating a situation in which a tired woman consents to sexual intercourse in the twilight of sleep and then falls asleep before she and her companion begin having intercourse.  Apparently, Jones claims that § 261(a)(4) does not give the man sufficient notice that his conduct is prohibited.

Since none of the victims testified that they consented to sexual intercourse or sexual touching before they fell asleep, Jones'challenge to § 261(a)(4) constitutes a facial challenge for vagueness rather than an "as applied" challenge.[36]  Both the Supreme Court and the Ninth Circuit

---

[33]  28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-06; *see also Lockyer,* 538 U.S. at 70-75 (explaining this standard).

[34]  Petition, p. 12.

[35]  Petition, p. 12.

[36]  Jones testified that Elisa P. consented to the sexual encounter before she fell asleep. Since the jury could have convicted Jones under California Penal Code § 261(a)(4) even if they found his testimony credible, the guilty verdict does not contain an implicit finding that Elisa P. did not consent to sexual intercourse before she fell asleep.  However, the California Court of Appeal held:

have held that mere "'speculation about possible vagueness in hypothetical situations not before

the [c]ourt' will not support a facial attack on a statute that is 'valid 'in the vast majority of its

intended applications.' ' " [37]  Thus, Jones' facial challenge to California Penal Code § 261(a)(4),

based in a hypothetical scenario, is not properly before this Court.

     Even if this Court were to reach the merits of Jones' argument, he would not prevail.  In a

facial vagueness challenge, the reviewing court must look to the plain language of the statute, as

well as construe the statute as the state courts have interpreted it.[38]  Jones argues that California

Penal Code § 261(a)(4) does not give a defendant sufficient notice that engaging in sex with an

unconscious individual could subject the defendant to rape charges in a situation where the

unconscious victim gave the defendant prior consent.  However, the California Court of Appeal

addressed this issue in *People v. Dancy*, 102 Cal.App.4th 21 (Cal. App. 2002).  *Dancy* held:

> Penal Code section 261, subdivision (a) contains numerous subdivisions defining several
> different types of rape.  Some of these subdivisions contain a lack of consent element;
> others do not.  The subdivision describing rape of an unconscious person does not
> contain a lack of consent element.  "When the Legislature has used a term or phrase in

---

No evidence at trial suggested that any of the victims ever consented in advance to
having sex with defendant while they were asleep or unconscious.  Instead, Elisa was
shocked and upset when she awoke and found defendant having sex with her.  Sharon
was outraged when she awoke and found defendant lying naked on top of her.  *Jones*,
2005 WL 2160425 at 6.

This Court is bound by this factual finding of the Court of Appeal unless Jones rebuts it with
clear and convincing evidence, a burden which he has failed to satisfy.

[37]  *Hess v. Board of Parole and Post-Prison Supervision*, 514 F.3d 909, 913 (9th Cir.
2008) (quoting *Hill v. Colorado*, 530 U.S. 703, 733 (2000); *see United States v. Raines*, 362 U.S.
17, 23, 80 S. Ct. 519, 4 L.Ed.2d 524 (1960)); *see also* Laurence H. Tribe, American
Constitutional Law § 12-32 (2d ed. 1988) ("Where the vice is vagueness . . . the statute in
question is vague either in all possible applications or at least as applied to the litigant's conduct,
and not simply as applied to some others.").

[38]  *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 941-42 (9th Cir.1997).

one part of a statute but excluded it from another, courts do not imply the missing term or phrase in the part of that statute from which the Legislature has excluded it."[39]

California Penal Code § 261(a)(4) clearly does not contain a "lack of consent" element. Thus, Jones counter-intuitively tries to argue that the California Legislature's decision *not* to include a "lack of consent" element somehow makes the statute ambiguous. This argument is without merit since states possess primary authority for defining and enforcing the criminal law.[40] To the extent that the California Legislature did not want to recognize prior consent as a defense to California Penal Code § 261(a)(4), the clearest way to accomplish this was to not include a "lack of consent" element to the crime. California Penal Code § 261(a)(4) is not vague. Accordingly, this Court cannot find the decision of the California Court of Appeal was contrary to established federal law or involved an unreasonable interpretation of the facts.[41] Jones is not entitled to relief on his second ground.

<u>Claim 6:  Ineffective Assistance of Counsel</u>

Jones claims that his trial counsel was ineffective in the following ways: counsel failed to conduct a pretrial investigation, create a defense strategy, and present witnesses; counsel failed to request a mistake of fact instruction; counsel failed to object to the prosecutor's closing

---

[39] *Dancy*, 102 Cal.App.4th at 34-35.

[40] *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also Engle v. Isaac*, 456 U.S. 107, 119 (1982) (challenging the correctness of the application of state law does not allege a deprivation of federal rights sufficient for habeas relief); *Bell v. Cone,* 543 U.S. 447, 455 (2005) (a federal court may not lightly presume that a state court failed to apply its own law).

[41] 28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-06; *see also Lockyer,* 538 U.S. at 70-75 (explaining this standard).

argument; counsel failed to seek DNA testing; counsel failed to impeach the victims, and; counsel failed to challenge the investigation by the Davis Police Department. While Jones presented this claim to the California Courts in his petition for habeas corpus, none of the state courts addressed it on the merits; rather, the courts issued "post-card" denials, simply stating that Jones was not entitled to relief. As noted above, when there is no reasoned state court decision denying an issue presented to the state court and raised in a federal habeas petition, this Court must presume that the state court decided all the issues presented to it and perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable.[42] In so doing, because it is not clear that the state court did not so do, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds, giving the presumed decision the same deference as a reasoned decision.[43]

Under *Strickland*, to demonstrate ineffective assistance of counsel, Jones must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[44] As noted previously, "federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision 'was contrary to' federal law then clearly established in the holdings of this Court, § 2254(d)(1); or that it 'involved an unreasonable application of' such law; or that it 'was based on an unreasonable determination of the facts' in light of the record before the state court."[45] Thus, "[t]he pivotal question is whether

---

[42] *Reynoso*, 462 F.3d at 1109; *Pham*, 400 F.3d at 742.

[43] *Harrington*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *see Harris*, 489 U.S. at 263; *Coleman,* 501 U.S. at 740.

[44] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[45] *Harrington*, 131 S. Ct. at 785.

the state court's application of the *Strickland* standard was unreasonable.  This is different from

asking whether defense counsel's performance fell below *Strickland*'s standard."[46]  "For

purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an

incorrect application of federal law.'  A state court must be granted a deference and latitude that

are not in operation when the case involves review under the *Strickland* standard itself."[47]  It is

through this doubly deferential lens that a federal habeas court reviews *Strickland* claims under

the § 2254(d)(1) standard.[48]

<u>Failure to Investigate, Develop a Defense-Strategy and Present Witnesses</u>

Jones claims that his counsel failed to conduct a thorough pre-trial investigation into his

case, develop a viable trial strategy, and present witnesses in Jones' defense.  The United States

Supreme Court has said that counsel need not undertake exhaustive witness investigation.  The

question is not "what is prudent or appropriate, but only what is constitutionally compelled."[49]

While "counsel has a duty to make reasonable investigations or to make a reasonable decision

that makes particular investigations unnecessary," an attorney's strategic decisions "made after

thorough investigation of law and facts relevant to plausible options are virtually

unchallenceable."[50]  "[S]trategic choices made after less-than-complete investigation are

---

[46] *Id.*

[47] *Id.*

[48] *Knowles v. Mirzayance*, 556 U.S. --, 129 S. Ct. 1411, 1420 (2009) (citing *Yarborough v. Gentry*, 590 U.S. 1, 6 (2003)).

[49] *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)).

[50] *Strickland*, 466 U.S. at 690.

15

reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."[51]

Jones' claim that his trial counsel failed to adequately investigate his case is contravened by the record.  The record indicates that, before the trial, Jones' counsel met with him, attempted to interview the victims, and interviewed several of Jones' female friends regarding his character.[52]  This investigation was clearly adequate.  Jones next claims that his counsel should have interviewed Russell Felos and Pete Christopher regarding the fact that Elisa P. had an ongoing sexual relationship with Felos.[53]  However, Elisa P. testified that she had a sexual relationship with Felos, and thus, Jones is unable to show that, had his attorney discovered this fact during his investigation, the outcome of the case would have been different.  Jones has failed to show that his counsel's pre-trial investigation was constitutionally deficient, and that had counsel conducted a more thorough investigation the outcome would have likely been different.

Jones next challenges his counsel's trial strategy, claiming that counsel failed to develop "evidence to corroborate [his] testimonial claims of consent and reasonable belief in consent."[54] However, as noted in this Court's discussion of Jones' second claim, prior consent is not a defense to California Penal Code § 261(a)(4).  To the extent that Jones claims his counsel's general trial strategy was deficient, this Court notes that an attorney's strategic decisions "made

---

[51] *Id*. at 690-91.

[52]  *See* Petition, pp. 166-71, 187; 1 CT 129; *see* 1 RT 273.

[53]  Jones claims that Elisa P. had an incentive to claim that she was raped since she was seeing Felos, and Felos might have become jealous and angry if he knew she had consensual sex with another man.

[54]  Petition, p. 117.

after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."[55]

Finally, Jones claims that his counsel should have called several of his friends and women with whom Jones had previous relationships to testify to Jones' respect for women and non-violent character.  While it certainly may have been a viable trial strategy to paint Jones as a non-violent individual who respects women, counsel declined to do so because "he did not have the time to prepare them to testify and was unsure about what they would say."[56]  Thus, given this uncertainty, it was perfectly reasonable for counsel to decline to put these witnesses on the stand.  This conclusion is further supported by the fact that these witnesses did not have firsthand knowledge of the alleged events, and could have been impeached for bias.  Finally, Jones has not demonstrated that the result would have likely been different had these individuals testified.  Jones is not entitled to relief on this theory.

### Counsel Failed to Request a Mistake of Fact Instruction

On page 9 of his Petition Jones claims that his counsel was ineffective for failing to request a mistake of fact instruction.  However, nowhere in his Petition does he develop an argument to support this issue or provide any factual or legal support for it.  Accordingly, Jones has failed to meet his burden of showing his entitlement to relief under this claim.

### Counsel Failed to Object to the Prosecutor's Closing Argument

---

[55] *Strickland*, 466 U.S. at 690.

[56]  Petition, p. 62.

According to Jones, the prosecutor's closing argument was full of improper, inflammatory comments, and his counsel was deficient for failing to object to these statements. Specifically, Jones claims that the prosecutor improperly raised a "surprise drugging theory" and improperly used the terms "predator," "pattern," and "sex offender" when referring to Jones and his conduct.

"Counsel are given latitude in the presentation of their closing arguments, and courts must allow the prosecution to strike hard blows based on the evidence presented and all reasonable inferences therefrom."[57]  "But, while [the government] may strike hard blows, [it] is not at liberty to strike foul ones."[58]  "[A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations."[59]

After reviewing the record, it is clear that the prosecutor's comments were simply fair comments on the evidence.  During the trial three different women testified that Jones sexually assaulted them while they were sleeping.  If the jury believed these women, then the evidence would certainly suggest that Jones had engaged in a pattern of predatory behavior.  The comments on the pattern and nature of Jones' alleged conduct were not improper.  Furthermore, the record does not indicate that the prosecutor suggested that Jones had drugged any of the

---

[57] *Ceja v. Stewart*, 97 F.3d 1246, 1253 (9th Cir. 1996).

[58] *Berger v. United States*, 295 U.S. 78, 88 (1935).

[59]  *Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974).

victims in the closing argument.[60]  Thus, Jones' counsel was not deficient for failing to object to

these statements.[61]  Jones is not entitled to relief under this claim.

Counsel Failed to Seek DNA Testing

Jones claims that his counsel was deficient for failing "to seek semen DNA exam and

results of samples taken from Miss P[.] to determine if key defenses were available e.g. [t]aking

the 5th, alternate source of injury . . . ."[62]  This argument is without merit.  Jones admitted to

having sexual intercourse with Elisa P.  Accordingly, Jones is unable to show that a DNA test

would have altered the outcome of the trial, other than to corroborate his testimony.[63]

Counsel Failed to Impeach the Victims

Jones claims that his counsel failed to adequately impeach each of the victims on cross-

examination.  Jones provides, what he concludes, is significant evidence which would have

impeached each witness.

Jones first claims that his counsel should have sought to impeach Sharon G.'s testimony

on the basis of a 2002 arrest for arson and attempted murder.  Apparently, Sharon G. was present

when her friend attempted to seek revenge on a third party, following a road-rage incident.

---

[60]  After the prosecution rested, the prosecutor said, "I believe the testimony at trial has been that the rapes occurred on an unconscious person rather than an intoxicated person," and moved to dismiss counts 1, 2, and 3. (1 RT 296-97.)  The court granted the motion. (1 CT 214; 1 RT 296-97.)  During closing argument, the prosecutor argued that Petitioner was guilty because he had assaulted his victims while they slept, not after they had been drugged.  (2 RT 495-97, 499, 501-03, 524, 529).

[61]  *James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994) ("Counsel's failure to make a futile motion does not constitute ineffective assistance of counsel.").

[62]  Petition, p. 121.

[63]  *Strickland*, 466 U.S. at 687.

Although she was initially arrested and charged, all of the charges against her were dropped.  In a motion *in limine*, the prosecution sought to suppress this incident, and the defense counsel did not object.  Jones claims that his counsel should have done "everything" he could to use this evidence to impeach Sharon G.

Jones' claim fails because he is unable to show prejudice.  First of all, Jones has not showed that, had his counsel opposed the motion, it is likely the court would have ruled the evidence admissible.  The incident resulted in Sharon G. being cleared and did not bear on her propensity for truthfulness.  Thus, the trial court would have probably excluded the evidence as unduly prejudicial.[64]

Even if Jones' trial counsel did manage to win the motion, Sharon G. would have been given a chance to place the events into context.  This, coupled with the fact that all charges against her were dropped, simply suggests she was in the wrong place at the wrong time.  Jones has not shown that this piece of evidence would have caused the jury to believe Sharon G. any less.

Jones next claims that defense counsel should have impeached Anne E. with a video of the campground where he attacked her.  Jones notes that the video shows that the sleeping

---

[64]  California Evidence Code § 352 reads:
The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.
Additionally, California Courts have held that "impeachment evidence other than felony convictions entails problems of proof, unfair surprise, and moral turpitude evaluation which felony convictions do not present.  Hence, courts may and should consider with particular care whether the admission of such evidence might involve undue time, confusion, or prejudice which outweighs its probative value." *People v. Wheeler*, 841 P.2d 938, 944-45 (Cal. 1992).

quarters and shower facilities were co-ed and that an individual at the retreat looked like Jones.

However, nothing in this tape would have contradicted Anne E.'s story on its face.  Indeed, the

fact that there were co-ed sleeping quarters may have given Jones easier access to Anne E.'s bed.

Jones' counsel was not deficient for failing to attempt to impeach Anne E. with the video.

Finally, Jones claims that his counsel was deficient for not attempting to impeach Elisa P.

with what Jones contends was a prior, inconsistent statement.  At trial, Elisa P. testified that on

the night of the incident she fell asleep three times, and three times she awoke to Jones engaging

in sexual intercourse with her.  The nurse who took Elisa P.'s rape exam testified that Elisa

responded "No" when the nurse asked her if she had experienced a lapse of consciousness during

the rapes.  Elisa P. did not recall giving the nurse this answer.  Jones claims that his counsel was

deficient for not pursuing a line of questioning which would lead the jury to believe that Elisa P.

was actually conscious during the sexual encounter, thereby negating the element of

"unconsciousness."  First of all, this Court notes that Elisa P.'s statements are not inherently

inconsistent.  Elisa P. testified that she awoke three different times to Jones raping her.  Thus,

each time Jones began to assault Elisa P. she was asleep, or "unconscious"; however, once she

awoke and became aware of the fact that she was being assaulted, she did not experience a

subsequent lapse in consciousness.[65]  Elisa P. never wavered from this story, and had Jones'

counsel pressured her on this matter, he may have risked having her reemphasize that she was

asleep when the assault began.  Furthermore, when taken in its proper context, this statement

does nothing to negate the allegation that Elisa P. was asleep when Jones began to assault her.

---

[65]  To the extent that she fell asleep between the first and second rape and the second and third rape, she was not unconscious "during" the rapes.

Finally, this Court notes that during defense counsel's closing argument, he discussed alleged inconsistencies between Elisa's testimony and her responses during the rape exam.[66] Jones' counsel was not deficient for failing to attempt to impeach Elisa P. on these grounds.

<u>Counsel Failed to Challenge the Investigation by the Davis Police Department</u>

Finally, Jones claims that his counsel was inefficient for failing to challenge the investigation conducted by the Davis Police Department (D.P.D.). In a somewhat incoherent and disjointed argument, Jones claims the Davis Police Department had a history of pressuring women into falsifying sexual-assault claims. Jones claims that he alerted his counsel to this course of conduct, but his counsel failed to investigate it.

Jones first points to an article published on November 9, 2001, which he claims proves that the D.P.D. was falsifying claims of sexual assault.[67] Jones greatly misstates the content of the attached article: the writeup refers to another man, Robert Lugo, who was accused of sexually assaulting nine women. After two mistrials, Lugo pleaded guilty to four counts of felony sexual battery. There is nothing in this article which would have given Jones' trial counsel notice that the D.P.D. was improperly falsifying reports of sexual assault. Indeed, the charges resulted in a plea of guilty.

Jones next claims that three articles, all published on December 3, 2002, corroborate his allegations that the D.P.D. was coaching witnesses and falsifying allegations. This argument is as unpersuasive as the first one. Initially, this Court notes that the investigation referenced was conducted by the University of California, Davis, Campus Police Department (U.C. Davis P.D.),

---

[66] 2 RT 508-09.

[67] Petition, pp. 62-63, 141.

not the Davis Police Department.  The articles discuss a sexual assault investigation conducted by the U.C. Davis P.D., wherein the accuser recanted her story.  Once the accuser recanted her story, the U.C. Davis P.D. immediately closed its investigation.  There is no evidence that the U.C. Davis P.D. coached the accuser or manipulated her into falsifying sexual assault charges. These articles do not demonstrate a pattern of abusive conduct by the D.P.D.

Finally, Jones points to the declaration of Lauren Stevens, who recounted her somewhat negative experience with the D.P.D. in the course of the D.P.D.'s investigation into sexual assault filed by Stevens and her friend, Piper Wolfe.  Stevens stated that she did not want to pursue charges against the young men involved in the incident, but the D.P.D. pushed forward with an investigation.  Stevens also recalled that during a photo line-up she picked out a photograph of the man she thought assaulted her.  Officer Stevens[68] asked her if she was "sure" of her choice and at that point she chose another photo; her second selection turned out to be the alleged assailant.  Stevens claims that the experience with the D.P.D. was worse than the incident that lead to the allegations.  Stevens claims she told Jones' attorney about her experience, and Jones now asserts that his counsel was deficient for failing to pursue a theory that the D.P.D. manipulated the witnesses into testifying against him.

Jones' argument is without merit.  Despite Jones' assertions to the contrary, Officer Smith did not "point out" Stevens' alleged assailant, he simply asked her if she was "sure" of her first choice; obviously, she was not.  Secondly, Stevens said that she felt uncomfortable that the D.P.D. decided to push forward with an investigation, despite the fact that she said she did not feel taken advantage of and did not want to press charges.  Furthermore, Stevens did not indicate

---

[68]  Officer Stevens was the same D.P.D. officer who investigated Jones' case.

23

that the D.P.D. pressured her into offering false testimony regarding the incident.  They simply pursued an investigation against her wishes.  The fact that a potential victim of a crime may not feel victimized and does not want to press charges does not mean that a crime has not occurred.

Perhaps most relevant is the fact that there is nothing on the record to indicate that the victims in this case were coerced or manipulated into offering false or doctored testimony.  On the contrary, each of the victims in this case all appeared to testify willingly, and did not waiver in their accusations that Jones assaulted them in their sleep.  Thus, Stevens' recollection of her own experience with the D.P.D. did not place Jones' trial counsel under a duty to launch a full-scale investigation into the D.P.D.  Jones' trial counsel was not ineffective for failing to pursue this theory.  Jones is not entitled to relief on his sixth claim.

<u>Evidentiary Hearing</u>

The Supreme Court has held that in determining whether an evidentiary hearing is required in a habeas proceeding:

> The appropriate standard . . . is this:  Where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding.  In other words a federal evidentiary hearing is required unless the state-court trier of fact has after a full hearing reliably found the relevant facts.[69]

Jones has not identified any factual conflict that would require this Court to hold an evidentiary hearing to resolve.

---

[69] *Townsend v. Sain*, 372 U.S. 293, 312-13 (1963), *overruled on other grounds Keeny v. Tamayo-Keyes*, 504 U.S. 1 (1992), *superceded in part by statute*, 22 U.S.C. 2254(e)(2) (1996).

CONCLUSION AND ORDER

Jones is not entitled to relief under any ground raised in the Petition.  Accordingly,

The request for an evidentiary hearing is **DENIED**.

**IT IS HEREBY ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of

Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of

Appealability.[70]  Any further request for a Certificate of Appealability must be addressed to the

Court of Appeals.[71]

The Clerk of the Court is to enter judgment accordingly.

Dated: April 4, 2011

_____/s/ James K. Singleton, Jr._____
**JAMES K. SINGLETON, JR.**
United States District Judge

---

[70] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (internal quotation marks omitted)).

[71] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.